## ESTHER ROWE *et al. versus* THE GRANITE BRIDGE CORPORATION.

Although indictment is the proper remedy in the case of a public nuisance, yet where it is obviously necessary that such a nuisance should be immediately suppressed, it seems a court of chancery may interfere by injunction, until the slower process of indictment can be put in motion.

A creek in a salt marsh, in order to be deemed *navigable*, must not merely be sufficient to float a small boat at high water, but must be navigable generally and commonly, and not at extraordinary high tides only, to some purpose useful to trade or agriculture.

An individual or company, authorized by law to make a road, in the absence of positive enactment on the subject, are bound, in constructing the road over watercourses, on private land, to make bridges, culverts, or other provision for carrying off the water effectually, and to keep the same in suitable repair to effect the purpose ; and if they are under the necessity of diverting the water-course from its natural channel, they are at liberty to do so, making the like provision for carrying off the water.

The extent and limits of these implied powers must be determined by considering what is reasonable in the particular case.

BILL in equity. The plaintiffs allege that they are seised and possessed, as tenants in common, of a tract of salt marsh in Milton ; that from time immemorial there has been a creek commencing at the higher part of the marsh and passing through it to Neponset River, whereby the tide water is drained off from the marsh, which creek is of sufficient width and depth to admit boats, gondolas and light craft to pass up and down the creek in common tides, and such craft may be used to advantage in removing the crops of hay from the marsh ; that the

Rowe
*v.*
The Granite
Bridge Cor-
poration.

defendants, by their act of incorporation, were authorized to construct a road over the lands therein mentioned and to build a bridge over Neponset River; that pursuant to their authority, they laid out the road over the marsh and across the creek, and as the creek runs in an angular direction to that in which the road is laid out, the road passes over the creek the distance of fifteen rods ; and that the plaintiffs hoped the defendants would build a bridge over the creek, as they ought to have done, so as to give a free passage for the water and for such boats and craft as the plaintiffs should have occasion to employ, but that on the contrary they are proceeding to fill up the creek. And the bill prays for an injunction requiring the defendants to desist from filling up the creek.

The defendants, in their answer, say that they have proceeded to construct the road and bridge precisely in the manner and in the direction prescribed by their act of incorporation, (*St.* 1837, *c.* 154,) and have not done any thing not authorized by that act ; they deny that the creek was navigable for boats, gondolas and like craft ; they allege that above the road they have dug a ditch or canal extending from the creek to Neponset River and adjoining the road, which is larger and more convenient for draining off the water from the marsh and for any purpose of transportation by water than the creek ever was, and that the marsh above the road is better accommodated in all respects by the creek as it now exists and the canal, than it ever was by the creek above, and that the part of the marsh on the other side of the road has still the same accommodation and benefit by the water of the creek that it had before the making of the road ; and that if any damage has been or shall be done to any real estate owned by the plaintiffs, by the same being taken for the use of the road or bridge, the plaintiffs have a plain, adequate and complete remedy at law and by virtue of the defendants' act of incorporation.

The act of incorporation referred to authorizes the corporation to construct a road from a certain point in Milton to another in Dorchester, designating the precise courses and distances, " and to locate, build and construct a bridge across said [Neponset] river, in continuation of said last mentioned line of said

Rowe
*v.*
The Granite
Bridge Cor-
poration.

road ; " and to lay out their road " on the marsh not less than five, and not more than six rods wide ; " and the act provides, that the corporation shall be holden to pay for all damages to any and all real estate which shall be taken for the use of said road or bridge, which damages shall be estimated and assessed as is provided in the twenty-fourth chapter of the Revised Statutes, on "highways." The creek in question is not expressly alluded to in the act, but the line of the road thus designated crosses this creek.

*Richardson*, for the plaintiffs.

*Sprague*, for the defendants.

Feb. term
1839.

·SHAW C. J. delivered the opinion of the Court. This is a bill in equity, which comes before the Court upon regular pleadings and proofs. It goes substantially upon the ground of nuisance, and prays a perpetual injunction against the defendants.

The gravamen of the complaint is, that the plaintiffs are owners of a tract of salt marsh in Milton, and that there has been from time immemorial a salt water navigable creek through this marsh, which was of some benefit to them, in the use of their said land ; and that the defendants, having obtained an act of incorporation, and an·authority to build a road and bridge across Neponset River, and across this tract of marsh, were bound, in the execution of this authority, to erect a bridge over this navigable creek, so that the water might freely ebb and flow therein, as it has been heretofore accustomed to do, and so that the plaintiffs might use it, as a navigable stream for boats, gondolas and light craft.

The defendants, by their answer, deny that the creek in question is a navigable creek ; they deny that they are under any obligation, in extending their road over this creek, to erect a bridge across it ; they aver that they have strictly conformed to the terms of their act of incorporation, and have not exceeded the authority granted to them, and that if, by the taking a portion of their lands or otherwise, the complainants have suffered any damage, they have an adequate remedy at law.

It may be remarked in passing, that as set forth by the plaintiffs, the creek in question, as a navigable creek in which the tide ebbs and flows, would be a common highway, and the

appropriate remedy for a nuisance therein, it being a public nuisance, would be an indictment. It may be worth while to consider how far the Court ought to interfere by way of injunction, in case of a common nuisance. Perhaps where there is immediate danger to the health or safety of a community, and where it is obviously necessary that a nuisance should be immediately suppressed, as in case of a powder-house or a slaughter-house, in a populous neighbourhood, equity might interfere, until the slower process of indictment could be put in motion. In such a case, it is believed, a bill in equity was sustained, in the case of the erection and use of a chemical laboratory in Roxbury, a few years since.

But the question which has been mainly discussed in the present case is, whether the creek in question is a navigable creek, and this is a question of fact upon the evidence.

Before examining this evidence, it may be proper to consider what distinctly is meant by a navigable stream, when applied to tide water. It is not every ditch, in which the salt water ebbs and flows, through the extensive salt marshes along the coast, and which serve to admit and drain off the salt water from the marshes, which can be considered a navigable stream. Nor is it every small creek, in which a fishing skiff or gunning canoe can be made to float, at high water, which is deemed navigable. But in order to have this character, it must be navigable to some purpose, useful to trade or agriculture. It is not a mere possibility of being used under some circumstances, as at extraordinary high tides, which will give it the character of a navigable stream, but it must be generally and commonly useful to some purpose of trade or agriculture. [Here the court proceeded to consider and sum up the evidence.]

On the whole the Court are of opinion from the evidence, that this cannot be considered as a stream, navigable to any useful or beneficial purpose either of trade or agriculture. The claim, therefore, upon this part of the bill, cannot be maintained.

But it is further suggested, that the defendants have not only stopped all navigation along this creek by placing a solid structure across the same, but have obstructed the flow of the stream, and the drain of the water from the marshes

*Rowe*
*v.*
*The Granite Bridge Corporation.*

Rowe
v.
The Granite
Bridge Cor-
poration.

In order to avoid misconstruction, it is proper to state, that in the opinion of the Court, an individual or company making a road, pursuant to an authority granted by law, in the absence of positive enactment on the subject, in the execution of such authority, are bound, in constructing their road over water courses, on private land, to make suitable bridges, culverts or other provision for carrying off the water effectually ; that if in doing so, they are under the necessity of diverting the water-course, in some measure, from its natural channel, they are at liberty to do so ; making such bridges, culverts and drains as may be necessary to carry off the water, in the direction which they may give it, but they are bound, as part of their public duty, to keep such bridge, culvert or new water-course in suitable and sufficient repair, to effect the purpose for which it was made, and for carrying off the water effectually.  These powers and duties must necessarily be implied in law, because it must be presumed, that the petitioners' counsel could not have intended to ask, or the legislature to grant, an authority to enter upon and take private lands for public use, upon any other terms.  The extent and limits of these implied duties and powers, in the absence of positive provision in the legislative act, by which the power is granted, can only be determined by considering what is reasonable in each case.  The company are not to be required to go to any unreasonable expense ; as where a stream is a broad shallow water-course, which may be reduced in width, and deepened so as to carry off the water as effectually as before, we think the company might well be allowed, instead of building a bridge over the whole wide space, which it originally covered, to narrow it, and pass it by a suitable bridge.  So if the natural bed of such a water-course is muddy and deep, where it would be difficult and expensive to erect a bridge, they may change the water-course from its natural channel to another, taking care that it shall be equally beneficial for the purposes intended.  If, after all, there should happen to be private property so situated that some damage must be done to it, which cannot be obviated by reasonable precautions, inasmuch as it is expressly authorized by the legislature, in the exercise of the right of eminent domain, such proprietor must be left to seek his compensation, in the mode provided by the legislature.

In pursuance of such authority, the Court are of opinion, /hat the defendant company were justified in changing the water-course which drained the plaintiffs' marsh, by making the ditch or canal along the westerly side of their road ; that they will be bound to keep this canal open and scoured and in a proper state of repair to carry off the water, or to open the old water-course in the natural bed of the creek.

On the whole, the Court are of opinion, that the plaintiffs are not entitled to the relief prayed for, and that their bill must be dismissed, with costs.